[Cite as *Maiorana v. Walt Disney Co.*, 2021-Ohio-4530.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Joseph Maiorana et al., | : | |
| Plaintiffs-Appellees/<br>Cross-Appellants, | : | |
| | : | No. 20AP-207 |
| v. | | (C.P.C. No. 17CV-9661) |
| | : | |
| Walt Disney Company et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees/<br>Cross-Appellees, | : | |
| [True Grip and Lighting, Inc., | : | |
| Defendant-Appellant/<br>Cross-Appellee]. | : | |
| | : | |

D E C I S I O N

Rendered on December 23, 2021

**On brief:** *Rafidi, Pallante & Melewski, LLC, Jeffrey A. Pallante, and Ryan J. Melewski*, for plaintiffs-appellees/cross-appellants, Joseph Maiorana, Erin Maiorana, and Nora Maiorana. **Argued:** *Ryan J. Melewski.*

**On brief:** *Michael J. McLane*, for defendant-appellant/cross-appellee, True Grip and Lighting, Inc. **Argued**: *Michael J. McLane.*

APPEAL from the Franklin County Court of Common Pleas.

MENTEL, J.

{¶ 1} Defendant-appellant/cross-appellee, True Grip and Lighting, Inc. ("True Grip"), appeals from a March 10, 2020 judgment entry awarding a final jury verdict and costs totaling $263,340.65 to plaintiffs-appellees/cross-appellants Joseph Maiorana, Erin Maiorana, and Nora Maiorana. The Maioranas filed a cross-appeal from the March 10,

2020 entry denying their motion for prejudgment interest without allowing them to conduct discovery.

{¶ 2}    For the reasons that follow, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 3}    On November 7, 2015, Mr. Maiorana was working as a sideline still photographer for USA Today during a college football game in Columbus, Ohio between the Ohio State University ("Ohio State") and the University of Minnesota.  Ohio State had contracted with ESPN, Inc. ("ESPN") to televise the game.  ESPN hired True Grip as a subcontractor to provide a camera cart and driver to assist ESPN in videotaping the football game.  CSC was hired by Ohio State, paid by ESPN, to provide security services and operate as "spotters," individuals that assist in keeping the path clear for the camera cart.  Ming Entertainment, a contractor of ESPN, provided the cables attaching the video camera for the broadcast.

{¶ 4}    During the third quarter of the game, Ohio State elected to punt. Mr. Maiorana was positioned near the 10- or 15-yard line on the visitor sideline toward the open end of the stadium.  True Grip's camera cart was positioned behind the visiting team's bench.  After the change of possession, Mr. Maiorana walked toward the other end of the stadium.  As Mr. Maiorana approached the camera cart, he testified that he looked to see if the camera cart was set to move.  Mr. Maiorana stated that he did not hear any spotter or driver indicate that the cart was going to move.  Once Mr. Maiorana had passed, the camera cart operator, James Branch, accelerated the cart striking Mr. Maiorana causing injuries to his leg and ACL.  Mr. Branch testified that the camera cart operator must make sure the cart path is clear before he hits the gas.  Mr. Branch admitted that the camera cart struck Mr. Maiorana and did not blame ESPN, Ohio State, Ming Entertainment, or the spotters.

{¶ 5}    On October 27, 2017, the Maioranas filed a complaint against ESPN, the Walt Disney Company, and ABC Sports in the Franklin County Court of Common Pleas.  The Maioranas alleged causes of action for negligence and loss of consortium.  There is no dispute that the Maioranas did not name "John Doe" or unknown parties as defendants in the complaint.  A separate complaint against Ohio State was filed in the Ohio Court of Claims.

{¶ 6} ESPN, Walt Disney, and ABC Sports filed an answer on December 26, 2017. The defendants denied that they operated or controlled the camera cart during the game and that the injuries sustained by Mr. Maiorana were caused by the acts of another party. On January 9, 2018, the defendants filed a third-party complaint against True Grip asserting that True Grip operated the cart and equipment at issue. The defendants alleged that True Grip was obligated by contract to indemnify, defend, save, and hold harmless ESPN from all claims arising from its camera cart driver/operator. On January 18, 2018, the Maioranas filed a third-party complaint, pursuant to Civ.R. 14(A), against True Grip asserting the same allegations that were made against the original defendants.

{¶ 7} On November 13, 2018, True Grip filed a motion for summary judgment against the Maioranas arguing that the statute of limitations had expired. On December 17, 2018, the trial court denied the motion for summary judgment. On March 25, 2019, the Maioranas filed a motion for leave to amend their complaint to substitute True Grip for the Walt Disney Company, ESPN, and ABC. True Grip filed a memorandum in opposition on March 28, 2018. On March 28, 2018, the trial court granted the Maioranas' motion to substitute True Grip as the sole remaining defendant in the case.

{¶ 8} On March 27, 2019, True Grip filed a second motion for summary judgment arguing that the case should be dismissed as Mr. Maiorana assumed the risk of injury working as a photographer on the sideline of a football game. On March 28, 2019, True Grip filed a "renewed" motion for summary judgment arguing that the statute of limitations had expired in the case. The Maioranas filed a memorandum in opposition on April 5, 2019. On November 29, 2019, the trial court denied True Grip's motions for summary judgment finding that the Maioranas' claims against True Grip related back to the original complaint pursuant to Civ.R. 15(C). The trial court reasoned that the claims against True Grip originated out of the same occurrence as the original complaint, True Grip was on notice of the incident and the potential claims, and that True Grip knew or should have known that but for the mistaken identity it would have been named as a defendant in the original complaint. The trial court also rejected True Grip's assumption of risk argument stating that the risk of injury from being on the sideline of a nationally televised college football game originated from the field not a camera cart.

{¶ 9}   On February 3, 2020, the case proceeded to a jury trial.  True Grip moved for a directed verdict at the close of the Maioranas' case and at the close of its evidence.  Both motions were denied.  On February 6, 2020, the jury returned a verdict of $390,000, which was reduced to $259,350 after a comparative fault determination by the jury.[1]  On March 4, 2020, True Grip filed a series of post-trial motions.  On February 12, 2020, the Maioranas filed a motion for prejudgment interest arguing that True Grip failed to make good faith efforts to settle the case.  The Maioranas filed subpoenas requesting the insurance claim's file and attorney's file.  On March 4, 2020, the trial court conducted a hearing as to the outstanding motions.  Relevant to the instant appeal, the trial court denied True Grip's motions, granted the Maioranas' motion for costs for those depositions used at trial, and denied the Maioranas' motion for prejudgment interest.

{¶ 10}  The final judgment entry was filed March 10, 2020.  True Grip filed a timely appeal on April 8, 2020.  The Maioranas filed a cross-appeal on April 17, 2020.

## II.  ASSIGNMENTS OF ERROR

{¶ 11}  True Grip assigns the following as trial court error:

> 1. Trial court erred in denying True Grip's Motion for Summary Judgment in its Decision and Entry of December 17, 2018.
>
> 2. Plaintiff failed to comply with the applicable statute of limitations in filing his complaint, as applied to Defendant, True Grip.
>
> 3. Trial Court erred in deciding Plaintiff's untimely Third-Party Complaint relates back to the filing of the original complaint.
>
> 4. The Trial Court erred in granting Plaintiffs' Motion to Substitute True Grip and Lighting, Inc., as Proper Party Defendant in its Decision and Entry on March 28, 2019 and in denying True Grip's Summary Judgment Motions.
>
> 5. The Trial Court improperly allowed the Plaintiff to substitute True Grip for ABC, ESPN and Disney.
>
> 6. The Trial Court erred in its Decision and Entry of November 29, 2019, denying the True Grip Motions for Summary Judgment filed March 28, 2019 and March 27, 2019.

---

[1] The jury found Mr. Maiorana 33.5 percent at fault and True Grip 66.5 percent at fault for the accident.

7. The Trial Court improperly denied True Grip's Motion for Summary Judgment that Plaintiff assumed the risk of his injuries by accepting a game time field pass from OSU and proceeding to work on the field during the football game when he was injured by a known risk that was necessary for the game, as a televised contest.

8. The Trial Court erred in denying Defendant's Motions for Directed Verdict and the close of Plaintiff's case, and at the close of Defendant's evidence.

9. The Trial Court refused to provide Jury Instructions and Jury Interrogatories, under ORC 2307.23, as to claims of liability against unnamed third parties, despite Appellee having a pending case in The Ohio Court of Claims and the evidence proffered to the Court, as well as the testimony of Appellee, Mr. Saban, Mr. Corcoran and Mr. Penner, and other testimony adduced regarding the role of other non-parties in the Appellee's accident.

10. It was an abuse of discretion for the Trial Court allowed the prejudicial use of exhibit 22, which was not disclosed by Plaintiff until January 31, 2020, when the discovery deadline was December 1, 2019, resulting in an award of lost income beyond the previous claim of lost income in an interrogatory that was never supplemented by Appellee.

11. The Trial Court allowed evidence of gross income figures to be presented to the jury without the proper testimonial or evidentiary foundation, in the form of Plaintiff's testimony as to amounts of lost income and Exhibit 22 and expert testimony.

12. The Trial Court awarded Plaintiff additional and duplicative deposition and other fees that were improperly taxed as costs.

(Sic passim.)

{¶ 12} The Maioranas assign the following as trial court error:

1. The trial court abused its discretion by ruling on a motion for prejudgment interest without first allowing plaintiff to conduct discovery.

## III.  LEGAL ANALYSIS

### A. True Grip's First, Second, Third, Fourth, and Fifth Assignments of Error

{¶ 13} In True Grip's first five assignments of error, it alleges that the trial court erred at various stages in this litigation allowing the Maioranas to substitute True Grip as a defendant in the case as the statute of limitations had expired.

{¶ 14} Summary judgment is only appropriate when the moving party demonstrates that: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *2454 Cleveland, LLC v. TWA, LLC*, 10th Dist. No. 19AP-157, 2020-Ohio-362, ¶ 8, quoting *Capella III, LLC v. Wilcox*, 10th Dist. No. 10AP-206, 2010-Ohio-4746, ¶ 16, citing *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6. "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once the moving party meets its initial burden, the nonmoving party must set forth particular facts that demonstrate a genuine issue for trial. *Dunlop v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 19AP-58, 2019-Ohio-3632, ¶ 6, citing *Dresher* at 293. In reviewing a motion for summary judgment, we must construe all evidence in a light in favor of the nonmoving party. *2454 Cleveland, LLC* at ¶ 8, citing *Pilz v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8.

{¶ 15} Appellate review of summary judgment is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Gabriel* at ¶ 12, citing *Byrd* at ¶ 5, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992). We must affirm the trial court's judgment if any grounds raised by the movant at the trial court are found to support summary judgment, even if the trial court failed to consider such grounds. *Eichenberger*

*v. Woodlands Assisted Living Residence, L.L.C.*, 10th Dist. No. 14AP-272, 2014-Ohio-5354, ¶ 10, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

**{¶ 16}** It is well-established law that we review a trial court's ruling whether to grant a motion for leave to amend a complaint under an abuse of discretion analysis. *Leatherwood v. Medco Health Solutions of Columbus*, 10th Dist. No. 13AP-242, 2013-Ohio-4780, ¶ 9, citing *Csejpes v. Cleveland Catholic Diocese*, 109 Ohio App.3d 533, 541 (8th Dist.1996), citing *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120 (1991). An abuse of discretion goes beyond an error of law. *Id.* The trial court's decision must be unreasonable, arbitrary, or unconscionable. *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive." (Emphasis sic.) *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

**{¶ 17}** Preliminarily, we note that True Grip's brief fails to comply with App.R. 16 as it did not separately argue each assignment of error. App.R. 16(A)(7) requires each assignment of error to include "[a]n argument containing the contention of the appellant with respect to each assignment of error presented for review." While it is within the reviewing court's discretion to consider assignments of error together, the parties do not have this option and are required to separately argue each assignment of error in its brief. *Fiorilli Constr., Inc. v. A. Bonamase Contracting, Inc.*, 8th Dist. No. 94719, 2011-Ohio-107, ¶ 30. While App.R. 12(A) allows this court to disregard an assignment of error not separately argued in its brief, in the interests of justice, we will address True Grip's arguments as to the statute of limitations issue and the trial court's granting of the Maioranas' motion to substitute pursuant to Civ.R. 15(C).

### 1. Statute of Limitations.

**{¶ 18}** True Grip argues that the statute of limitations expired in this case before it was named as a defendant. R.C. 2305.10(A) states "an action for bodily injury * * * shall be brought within two years after the cause of action accrues. * * * [A] cause of action accrues under this division when the injury or loss to person or property occurs."

**{¶ 19}** Civ.R. 15 sets forth requirements for amendment and supplementing pleadings. Civ.R. 15(A), in relevant part, states:

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires.

{¶ 20} The purpose of Civ.R. 15(C) is to provide an avenue for the moving party to correct a mistake concerning the identity of the proper party in the case. The moving party must meet three requirements before the amended pleading relates back to the original complaint. Civ.R. 15(C). "First, the amended complaint must arise from the same events which support the original complaint. Second, the party 'brought in' by the amendment must receive, 'within the period provided by law for commencing the action,' such notice of the action that the party is able to maintain a defense. Third, within the same period as provided in the second requirement, the new party must have or should have known that but for a mistake concerning the proper party's identity, the action would have been brought against the new party." *Cecil v. Cottrill*, 67 Ohio St.3d 367, 370 (1993). "Rule 15(C) makes clear that the inadvertent misnomer of a party, for example, may be corrected and that the correction relates back to the original pleading and is not affected by an intervening statute of limitation." Civ.R. 15(C), Staff Notes.

{¶ 21} Conversely, Civ.R. 15(D) governs the handling of unknown defendants referred to in a complaint by fictitious designation. The Supreme Court of Ohio has found that "[a] claimant may use Civ.R. 15(D) to file a complaint designating a defendant by any name and designation when the plaintiff has identified but does not know the *name* of that party, provided that the plaintiff avers in the complaint that the name of the defendant could not be discovered and a summons containing the words 'name unknown' is issued and personally served on the defendant." (Emphasis sic.) *Erwin v. Bryan*, 125 Ohio St.3d 519, 2010-Ohio-2202, ¶ 40. Civ.R. 15(C) and (D) address distinct procedural possibilities and operate independent of one another. *McGrath v. Team Columbus Soccer, LLC*, 10th Dist. No. 11AP-423, 2012-Ohio-1963, ¶ 12.

{¶ 22} After careful review of the record, we find that the Maioranas' claims are not barred by the expiration of the statute of limitations as their motion complied with the

requirements of Civ.R. 15(C). First, there is no dispute that the claim against True Grip arose out of the same events as the original complaint.[2] It is also clear that the Maioranas filed their initial complaint for negligence and loss of consortium within the two-year statute of limitations under R.C. 2305.10(A) as the accident occurred on November 7, 2015, less than two years before the complaint was filed on October 27, 2017. On January 9, 2018, Walt Disney, ESPN, and ABC filed their third-party complaint asserting that True Grip was obligated to indemnify, defend, save, and hold harmless ESPN from all claims arising out of the negligence from its driver/operator. The Maioranas filed their third-party complaint against True Grip under Civ.R. 14(A) soon after on January 18, 2018. On March 25, 2019, the Maioranas filed a motion for leave to substitute True Grip for Walt Disney Company, ESPN, and ABC, which was granted by the trial court.

{¶ 23} Second, the record is clear that True Grip had notice of the complaint well before the statute of limitations expired and was not prejudiced maintaining a defense on the merits. The record indicates that True Grip has known of this case going back to 2016. On January 5, 2016, ESPN sent a letter to True Grip notifying them of the incident and the Maioranas' potential claims. The letter states in relevant part: "[w]hile no litigation is yet filed, this letter serves as notice that ESPN's preliminarily investigation of the incident indicates that the sideline camera cart that allegedly struck Mr. Maiorana, and the driver of that cart, were provided to ESPN Productions, Inc. ("Productions") by True Grip & Lighting, Inc. ("True Grip") pursuant to the terms of the agreement dated August 16, 2013 (as amended) by and between True Grip and Productions ("the Agreement"). * * * We write to make True Grip aware of a potential claim by Mr. Maiorana." (Nov. 27, 2018 Maioranas' Mot. in Opp. of Summ. Jgmt., Ex. C.)

{¶ 24} ESPN sent a second letter on November 10, 2017 to True Grip notifying them of their demand for indemnification in the case. ESPN provided a copy of the summons and complaint in the letter. ESPN sent a third letter dated November 16, 2017 providing True Grip a second notice of demand for indemnification based on its contract to defend and indemnify ESPN.

---

[2] True Grip concedes the "first and second requirements have been met." (True Grip's Brief at 18.) In the interest of clarity, however, we will briefly address these factors.

{¶ 25} Finally, True Grip knew, or should have known, that but for the mistake it would have been added as a party in the original complaint filed October 27, 2017. The record reveals that the Maioranas were not aware of True Grip's role in this case until the third-party complaint was filed by ESPN on January 9, 2018. The Maioranas demonstrated that they engaged in negotiations with ESPN's third-party administrator, ESIS, Inc., prior to filing the complaint. Counsel for the Maioranas stated, in an affidavit provided to the trial court, that at no point did ESPN bring up True Grip as the true party in interest. Further adding to the confusion, the record also shows the cart operator on the date of the accident was wearing an ESPN shirt. True Grip fails to point to any meaningful evidence in the record to contradict these claims. Accordingly, as the March 28, 2019 amended complaint relates back to the October 27, 2017 filing, the Maioranas' motion complied with the requirements of Civ.R. 15(C).

{¶ 26} True Grip argues that the Maioranas failed to comply with Civ.R. 15(D) as there were no John Doe or XYZ defendants to substitute in the complaint. True Grip cites this court's decision in *Pearson v. Columbus*, 10th Dist. No. 14AP-313, 2014-Ohio-5563, to support its claim. True Grip's argument misses the mark. This is not a case of unknown identify but of mistaken identity. In order for Civ.R. 15(D) to apply, the party has to have brought a claim against a party but was unaware of their actual name. The plaintiff then must refer to the defendant by a fictitious designation. Here, the Maioranas mistakenly believed that ESPN, Walt Disney Company, and ABC were the correct defendants in the case. When ESPN identified True Grip as the true defendant, the Maioranas moved to correct the error. "The two subsections of Civ.R. 15 address different procedural possibilities and operate independently. * * * [when a party proceeds] in error against a clearly identified but incorrect entity Civ.R. 15(D) is not invoked." *McGrath* at ¶ 12. As such, Civ.R. 15(D) is inapplicable.

{¶ 27} Accordingly, appellant's first five assignments of error are overruled.

**B. True Grip's Sixth, Seventh, and Eighth Assignments of Error**

{¶ 28} In True Grip's sixth, seventh, and eighth assignments of error, it alleges that the trial court erred in denying its motion for summary judgment then denying its motions for directed verdict based on its assumption of risk argument.

{¶ 29} As appellant's six and seventh assignment of error originate from the trial court's denial of its motion for summary judgment, the standard for reviewing a motion for summary judgment under Civ.R. 56 is set forth in the previous section.

{¶ 30} Appellant's eighth assignment of error arises from the trial court's denial of its motion for a directed verdict at trial. Civ.R. 50(A) motions for directed verdicts do not present factual issues but raises questions of law. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 25. When reviewing a motion for directed verdict, the court must consider the evidence most strongly in favor of the nonmoving party. Civ.R. 50(A). When considering the motion, the court's review does not involve weighing of the evidence or credibility of the witness. *Reeves v. Healy*, 10th Dist. No. 10AP-418, 2011-Ohio-1487, ¶ 37, citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 679-80 (1998). " 'The court must deny the motion where any evidence of substantial probative value favors the nonmoving party and reasonable minds might reach different conclusions on that evidence.' " *Father's House Internatl., Inc. v. Kurguz*, 10th Dist. No. 15AP-1046, 2016-Ohio-5945, ¶ 36, quoting *Reeves* at ¶ 37. As sufficiency of the evidence is a question of law, we review the trial court's ruling of a motion for a directed verdict de novo. *Father's House Internatl.* at ¶ 36, citing *Reeves* at ¶ 37.

{¶ 31} As stated in the previous section, True Grip has failed to set forth each assignment of error separately in contravention of App.R. 16(A)(7). While this court may dismiss the assignment of error under App.R. 12, in the interests of justice, we will address True Grip's arguments as to whether Mr. Maiorana assumed the risk of injury from the camera cart by working as a photographer during the Ohio State football game.

{¶ 32} It is well-established that Ohio law recognizes three types of assumption of risk as defenses to negligence: express, primary, and implied or secondary. *Cameron v. Univ. of Toledo*, 10th Dist. No. 16AP-834, 2018-Ohio-979, ¶ 41, citing *Schnetz v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 10AP-959, 2011-Ohio-3927, ¶ 21, citing *Crace v. Kent State Univ.*, 10th Dist. No. 08AP-1080, 2009-Ohio-6898, ¶ 10. Express assumption of the risk is applicable when the parties expressly agree to release liability. *Crace* at ¶ 11, citing *Ballinger v. Leaniz Roofing, Ltd.*, 10th Dist. No. 07AP-696, 2008-Ohio-1421, ¶ 6. Implied assumption of risk applies when a plaintiff consents to or acquiescence to an identifiable, known, or obvious risk to plaintiff's safety. *Ochall v. McNamer*, 10th Dist. No. 15AP-772,

2016-Ohio-8493, ¶ 33, citing *Collier v. Northland Swim Club*, 35 Ohio App.3d 35, 37 (10th Dist.1987).

{¶ 33} Primary assumption of the risk is applicable when "a person who voluntarily engages in a recreational or sporting activity assumes the inherent risks of that activity and cannot recover for injuries resulting from the activity unless the defendant acted recklessly or intentionally in causing the injuries." *Cameron* at ¶ 42, citing *Morgan v. Kent State Univ.*, 10th Dist. No. 15AP-685, 2016-Ohio-3303, ¶ 12; *Marchetti v. Kalish*, 53 Ohio St.3d 95 (1990), paragraph one of the syllabus. The rationale is that certain activities present risks so inherent that the possibility of injury is unavoidable. *Crace* at ¶ 13, citing *Collier* at 37. The participant tacitly consents to the risk of injury inherent in the activity by the very nature of participating in said activity. *Id.* " 'Because a successful primary assumption of risk defense means that the duty element of negligence is not established as a matter of law, the defense prevents the plaintiff from even making a prima facie case.' " *Wolfe v. Bison Baseball, Inc.*, 10th Dist. No. 09AP-905, 2010-Ohio-1390, ¶ 21, quoting *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 432 (1996). "Thus, application of primary assumption of risk to sports events requires that the danger involved is ordinary to the game, it is common knowledge that the danger exists, and the resulting injury occurs as a result of the danger during the course of the game." *Gallagher v. Cleveland Browns Football Co., Inc.*, 93 Ohio App.3d 449, 459 (8th Dist.1994), *reversed on other grounds*, 74 Ohio St.3d 427 (1996).

{¶ 34} Both parties rely on *Gallagher* to support their analysis. A brief review is instructive. In *Gallagher*, the plaintiff was a videographer working on the sideline of a football game between the Cleveland Browns and Houston Oilers. During the game, two players collided with the plaintiff resulting in injuries. The Eighth District Court of Appeals concluded that the plaintiff had assumed the risk of injury as the danger of a collision with a player while working on the sideline was typical to the game of football. The court found that colliding with players and sideline spectators as they are running out of bounds are events that are foreseeable and customary of football. "The risk of a collision is ordinary to the game of football because players advance for the ball and when advancing they collide with spectators and participants, which is the nature of the sport. The danger is known to

all, especially those who roam the sidelines every game day jockeying for a good position to tape the game." *Gallagher* at 459.

{¶ 35} Here, like *Gallagher*, Mr. Maiorana was injured while working as a photographer during a football game. Unlike *Gallagher*, Mr. Maiorana's injury did not originate from a collision with players running out of bounds, but from a fellow media member operating a camera cart. While there is an inherent risk of injury involved standing on the sidelines of a football field, that risk is from the activities on the field, not from other media personnel and their equipment. "Where the risk at issue is not inherent, then a negligence standard applies." *Horvath v. Ish*, 134 Ohio St.3d 48, 2012-Ohio-5333, ¶ 19. The risk of injury from the camera cart is not so inherent to the sport of football that it cannot be eliminated. *Horvath* at ¶ 19, citing *Pope v. Willey*, 12th Dist. No. CA2004-10-077, 2005-Ohio-4744 (finding the injured party colliding with a truck on a road is not an inherent risk of riding an ATV); *Goffe v. Mowell*, 2d Dist. No. 98-CA-49 (Feb. 5, 1999) (faulty design of a racetrack is not an inherent risk of go-cart racing). As the risk of injury from the camera cart was not directly associated with the football game, it did not fall within the scope of Mr. Maiorana's assumption of risk.

{¶ 36} Appellant cites this court's decision in *Schnetz*, 2011-Ohio-3927, at ¶ 28, for the proposition that the primary assumption of the risk defense applies to both coparticipants and nonparticipants. In *Schnetz*, we wrote "a primary-assumption-of-the-risk analysis focuses exclusively upon the activity itself; if the activity is one that is inherently dangerous and from which risks cannot be eliminated, primary assumption of the risk is applicable." True Grip's argument is without merit. The operation of the camera cart is not directly associated with the activity of a football game and, as such, is not within the scope of primary assumption of risk. "[O]nly those risks directly associated with the activity in question are within the scope of primary assumption of risk." *Gallagher* at 432. In this case, Mr. Maiorana had assumed the risk of potential injury from the activities on the field, i.e., collision with a player or getting hit with a football. Mr. Maiorana had not assumed any potential risk that may befall him while he is working on the sideline of the field. As an example, if the Goodyear Blimp, a staple of most professional sporting events, had dropped a piece of equipment from the sky onto the videographer during the game, resulting in the same injury, no logical argument could be made that Mr. Maiorana had

assumed the risk of injury because he was on the sideline of the field during a football game. So to here, it is not foreseeable or customary risk of Mr. Maiorana's profession if the camera cart operator fails to signal or identify if anyone was in his line of travel.

{¶ 37} True Grip also argues that Mr. Maiorana assumed the risk of his profession as he benefited professionally by positioning himself on the sideline of a football game, despite the risk of injury, citing *Gehri v. Capital Racing Club, Inc.*, 10th Dist. No. 96APE10-1307 (1997). In *Gehri*, a jockey brought a personal injury claim against the racetrack owner and lessee after he was injured falling from his horse. The jockey argued the defendants were negligent for failing to provide a breakaway inner racetrack rail. This court affirmed the trial court's grant of summary judgment in favor of the racetrack owner and lessee based on primary assumption of risk. This court reasoned that as there was no rule by the racing governing body on this issue, there was no evidence that the racetrack owner's failure to use a breakaway inner racetrack rail created a risk not inherent in the sport of horse racing. "Thus, primary assumption of risk requires an examination of the activity itself and not plaintiff's conduct. If the activity is one that is inherently dangerous and from which the risks cannot be eliminated, then a finding of primary assumption of risk is appropriate." *Gehri*. We also find this argument unpersuasive. Here, Mr. Maiorana was not participating in the sport itself as part of his employment but working as a photographer for the event. Moreover, in *Gehri*, the jockey's assumed risk of injury was falling from the horse and into the racetrack rail. In the present case, the assumed risk originated from the participants in the football game, not a camera cart. The operation of a camera cart is not within the ordinary bounds of the sport of football. As such, the facts in *Gehri* are distinct from the present case.

{¶ 38} Accordingly, True Grip's sixth, seventh, and eighth assignments of error are overruled.

### C. True Grip's Ninth Assignment of Error

{¶ 39} In True Grip's ninth assignment of error, it alleges the trial court erred in refusing to allow jury instructions or jury interrogatories apportioning fault to non-parties.

{¶ 40} The purpose of jury interrogatories is to " 'test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial.' " *Whitmer v. Zochowski*,

10th Dist. No. 15AP-52, 2016-Ohio-4764, ¶ 94, quoting *Cincinnati Riverfront Coliseum, Inc. v. McNulty Co.*, 28 Ohio St.3d 333, 336-37 (1986).  The trial court controls the substance and form of jury interrogatories and may reject potential interrogatories deemed "ambiguous, confusing, redundant, or otherwise legally objectionable." *Whitmer* at ¶ 96, citing *Ramage v. Cent. Ohio Emergency Servs., Inc.*, 64 Ohio St.3d 97, 107-08 (1992). Accordingly, a reviewing court considers the trial court's decision whether to submit a proposed interrogatory to a jury under an abuse of discretion analysis.  *Whitmer* at ¶ 96, citing *Freeman v. Norfolk & W. Ry. Co.*, 69 Ohio St.3d 611, 614 (1994).  The abuse of discretion standard is set forth in Section A of this decision.

{¶ 41} Pursuant to R.C. 2307.23(A), True Grip must demonstrate evidence of tortious conduct to include a jury interrogatory on apportionment.

> For purposes of [apportionment to non-parties], it is an affirmative defense for each party to the tort action from whom the plaintiff seeks recovery in this action that a specific percentage of the tortious conduct that proximately caused the injury or loss to person or property or the wrongful death is attributable to one or more persons from whom the plaintiff does not seek recovery in this action. Any party to the tort action from whom the plaintiff seeks recovery in this action may raise an affirmative defense under this division at any time before the trial of the action.

R.C. 2307.23(C).

{¶ 42} Similarly, a jury instruction must provide a correct and relevant statement of the law that is pertinent to the facts of the case.  *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 46.  "[I]n reviewing a record to determine whether there is sufficient evidence to support the giving of an instruction, 'an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.' " *State v. McDonald-Glasco*, 10th Dist. No. 17AP-368, 2018-Ohio-1918, ¶ 30, quoting *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 591 (1991); *Feterle v. Huettner*, 28 Ohio St.2d 54 (1971).  The trial court will not provide a jury instruction where there is no evidence to support an issue.  *Murphy* at 591, citing *Riley v. Cincinnati*, 46 Ohio St.2d 287 (1976).  The trial court's decision to provide or refuse a particular instruction is reviewed under an abuse of discretion analysis.  *McDonald-Glasco* at ¶ 29, citing *State v. Lipkins*, 10th Dist. No. 16AP-616, 2017-Ohio-4085, ¶ 28.

{¶ 43} True Grip alleges the trial court abused its discretion precluding jury interrogatories and instructions to determine the comparative negligence of ESPN, Ohio State, CSC, and Ming Entertainment.  The trial court denied True Grip's request for an interrogatory and instruction for these companies reasoning True Grip failed to present sufficient evidence that ESPN, Ohio State, CSC, or Ming Entertainment were responsible for Mr. Maiorana's injury.

{¶ 44} After careful review of the record, we find the trial court did not abuse its discretion precluding jury interrogatories or instructions as to the negligence of non-parties in this case.  First, as to CSC, True Grip contends that it should have been able to argue that the spotters were to blame for the accident.  However, Mr. Branch, the camera cart operator, placed the blame solely on himself and not the spotters.  True Grip fails to point to any evidence in the record that CSC is negligent in the accident.  As Mr. Branch acknowledged, he was the "captain of the ship."  (Tr. Vol. II at 192.)  Similarly, True Grip points to the general contractual relationship between ESPN and other parties but fails to identify the necessary evidence as to how ESPN breached its agreements.  While True Grip cites ESPN's general safety plan, it fails to identify how that plan contributed to Mr. Maiorana's injury.  As such, the trial court's denial of jury interrogatories and instruction for ESPN was reasonable.

{¶ 45} True Grip also fails to point to evidence that Ming Entertainment, a contractor of ESPN that provided the cables attaching the video camera to the broadcast, had a duty to provide a clear path for the camera cart.  As the injury was unrelated to the cables or the cable pullers, this argument is equally unavailing.  Finally, the fact that the injury occurred in the Ohio State stadium is insufficient to warrant an interrogatory or instruction without some evidence that Ohio State breached its duty of care.  While True Grip notes that there is a pending case in the Court of Claims, it fails to demonstrate how that, alone, warrants the inclusion of an interrogatory or instruction.  Given these facts, the trial court's determination to not include an interrogatory or instruction for any of the non-parties as to apportionment was not an abuse of discretion.  *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990) (finding that when applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court).

{¶ 46} Accordingly, True Grip's ninth assignment of error is overruled.

### D. True Grip's Tenth and Eleventh Assignments of Error

{¶ 47} In its tenth and eleventh assignments of error, True Grip alleges that the trial court abused its discretion allowing the Maioranas to use exhibit 22 and permitting the jury to resolve the amount of lost wages.

### 1. Admission of Exhibit 22

{¶ 48} True Grip contends the trial court abused its discretion permitting the Maioranas to use exhibit 22 as the document was produced after the discovery deadline, and only a few days before trial.

{¶ 49} The admission or exclusion of evidence rests within the discretion of the trial court. *Fairrow v. OhioHealth Corp.*, 10th Dist. No. 19AP-828, 2020-Ohio-5595, ¶ 55, citing *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, ¶ 20. Therefore, the admission of exhibit 22 is reviewed under an abuse of discretion analysis. We set forth the analysis for an abuse of discretion review in Section A of this decision. We also note that "[e]ven in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice." *Beard* at ¶ 20, citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-65 (1980).

{¶ 50} After careful review of the evidence, we find the trial court's decision to allow exhibit 22 was not an abuse of discretion. The record indicates Mr. Maiorana asserted lost wages or income since the filing of the complaint. Mr. Maiorana identified losses involving the Ohio High School Athletic Association ("OHSAA") and other lost revenue from his injuries in his interrogatory responses and deposition. While produced after the discovery deadline, exhibit 22 documents Mr. Maiorana's earnings related to his contract with the OHSAA. It is also worth noting that the trial court allowed the use of exhibit 22 as part of an overall resolution that included other documentary evidence produced after the discovery deadline. Prior to trial, the Maioranas filed a motion in limine to exclude True Grip's engineering expert, Mr. Morr. The trial court denied the motion and allowed True Grip to use the 116 photographs or videos that were produced by Mr. Morr after the discovery deadline. True Grip argues that Mr. Morr did not testify in the case and the 116 exhibits were not used at trial. This argument is irrelevant as the trial court permitted the use of these exhibits, and it was within True Grip's discretion to not call Mr. Morr in the

case. As both parties were permitted to use evidence produced after the discovery deadline, Mr. Maiorana had provided some support for his lost wages during discovery, and True Grip was able to cross-examine Mr. Maiorana as to the contents of exhibit 22, the trial court's decision to allow the use of exhibit 22 was not an abuse of discretion. Moreover, even if admission was unreasonable, the error did not affect the substantial rights of True Grip or was inconsistent with substantial justice.

### 2. Lost Wages

{¶ 51} True Grip argues that evidence of lost wages and business opportunity was improper without expert testimony. We review the trial court's decision to allow a non-expert witness to testify as to lost wages under an abuse of discretion analysis. *McKahan v. CSX Transp., Inc.*, 10th Dist. No. 09AP-376, 2009-Ohio-5359, ¶ 13, citing *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 616 (1998).

{¶ 52} Testimony from an expert witness is intended to "assist the trier of fact in determining a fact issue or understanding the evidence." *Miller* at 611. As set forth in Evid.R. 702(A), an expert witness's testimony must either relate to matters "beyond the knowledge or experience possessed by the lay persons," or dispel a misconception common among lay persons. "Simply because litigants often hire experts to proffer opinions and testimony concerning lost wages, does not mean that such an expert witness is necessary or required. Relevant evidence is that which tends to make any fact at issue either more probable or less probable than without considering the evidence." *McKahan* at ¶ 16.

{¶ 53} Here, the trial court found Mr. Maiorana was competent to testify as to his lost wages and any shortcomings in his testimony would go to the weight, not admissibility, of the testimony. True Grip was given the opportunity to cross-examine Mr. Maiorana as to his damages and identify any potential deficiencies it believed existed in his testimony. We note that Mr. Maiorana identified $31,000 in lost wages and business opportunity, but the jury only awarded $27,00 in lost wages. As such, True Grip's cross-examination apparently was effective in some respects. However, we find the trial court's determination that the testimony was relevant and within his personal knowledge for the lost wages was not an abuse of discretion.

{¶ 54} Accordingly, we overrule appellant's tenth and eleventh assignments of error.

### E. True Grip's Twelfth Assignment of Error

{¶ 55} In its twelfth assignment of error, True Grip argues the trial court erred in awarding additional and duplicative expenses as costs it contends were improperly awarded under Civ.R. 54(D).

{¶ 56} We review the trial court's determination of a motion for costs under an abuse of discretion analysis. *Kelly v. Northeastern Ohio Univ. College*, 10th Dist. No. 07AP-945, 2008-Ohio-4893, ¶ 38, citing *Sherman v. Fifth Third Bank*, 93 Ohio App.3d 63, 65 (2d Dist.1993). The abuse of discretion standard is provided in Section A of this decision.

{¶ 57} As set forth in Civ.R. 54(D), "[e]xcept when express provision therefore is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." The Supreme Court of Ohio's explanation of Civ.R. 54(D) is that the phrase "unless the court otherwise directs" allows the trial court discretion to order that the prevailing party carry all or part of his or her own costs. *Vance v. Roedersheimer*, 64 Ohio St.3d 552, 555 (1992). " 'Costs are generally defined as the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action *and* which the statutes authorize to be taxed and included in the judgment.' " (Emphasis added.) *Williamson v. Ameritech Corp.*, 81 Ohio St.3d 342, 343, quoting *Benda v. Fana*, 10 Ohio St.2d 259 (1967), paragraph one of the syllabus. This has been interpreted to require that expenses may not be taxed as costs without a statutory basis. *Benda* at 262-63. The Maioranas have identified R.C. 2319.27 as the statutory basis for awarding costs of the depositions.

{¶ 58} R.C. 2319.27 provides:

> The person taking and certifying a deposition may retain the deposition until the fees and expenses that the person charged are paid. The person also shall tax the costs, if any, of a sheriff or other officer who serves any process in connection with the taking of a deposition and the fees of the witnesses, and, if directed by a person entitled to those costs or fees, may retain the deposition until those costs or fees are paid.

{¶ 59} R.C. 2319.27, however, does not offer a statutory basis for taxing the services of a court reporter at a deposition as costs under Civ.R. 54(D). *Williamson* at syllabus. R.C. 2303.21 does allow the expense of procuring a necessary transcript of a judgment or proceeding as costs when used as "evidence in such action or for any other purpose." This court has found that the expense of depositions on cross-examination may be included as

a cost if used at trial. *Grant v. Forgash*, 10th Dist. No. 95APE06-792 (Dec. 26, 1995); *see also Barrett v. Singer Co.*, 60 Ohio St.2d 7, 9 (1979) (finding the expense of depositions taken de bene esse is to be taxed as costs if the deposition was used at trial). Moreover, Supp.R. 13(D)(2) provides that the reasonable expense of recording and presenting videotaped testimony shall be taxed as costs under Civ.R. 54(D).

{¶ 60} Here, the trial court awarded as costs the video deposition for three witnesses as well as the corresponding written transcript. There was also the allowance of the transcript for Mr. Branch and Mr. Maiorana that were used as impeachment testimony during the trial. The record reflects that when the video depositions were played at trial the court reporter referred to the written transcript and did not type down the testimony as the video was played for the jury. In granting the Maiorana's motion for costs of the transcriptions, the trial court supported its ruling stating that the transcripts were required to be filed if a video deposition was to be utilized at trial per the court's local rules. Here, it is evident from the record that the parties understood that the filing of the written transcripts were required to use the video deposition. The transcripts of Mr. Branch and Mr. Maiorana were allowed as they were used repeatedly at trial for impeachment purposes and on redirect. After review of the evidence, we cannot say that the court abused its discretion by granting those items to the Maioranas as costs pursuant to Civ.R. 54, R.C. 2303.21, Supp.R. 13(D), as the transcripts were a necessary trial expense.[3]

{¶ 61} Appellant's twelfth assignment of error is overruled.

### F. The Maioranas' Sole Assignment of Error

{¶ 62} In the Maioranas' sole assignment of error, they allege that the trial court abused its discretion in denying a motion for prejudgment interest without first allowing them an opportunity to conduct discovery.

---

[3] We note that in *Vossman v. Airnet Sys., Inc.*, 159 Ohio St.3d 529, 2020-Ohio-872, the Supreme Court of Ohio wrote, "R.C. 2303.21 does not provide statutory authority for a party to recover the cost of deposition transcripts used in support of a motion for summary judgment." We find this holding distinct from the instant case as the transcripts were required to be filed with the video deposition used at trial. Moreover, there is independent support through Supp.R. 13(D) and the trial court's pretrial directive to the parties that filing the transcripts was required to use the video depositions at trial. As such, we find the holding in *Vossman* inapplicable to the present case.

{¶ 63} We generally review the trial court's ruling on discovery matters under an abuse of discretion analysis. *Roe v. Planned Parenthood S.W. Ohio Region*, 122 Ohio St.3d 399, 421 (2009).

{¶ 64} R.C. 1343.03(C) serves to encourage parties to make good faith settlement offers to resolve their case in order to preserve judicial resources and promote judicial economy. *Kalain v. Smith*, 25 Ohio St.3d 157, 159 (1986). The trial court may award pre-judgment costs when, following a hearing, the trial court determines "the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." R.C. 1343.03(C)(1). The Supreme Court of Ohio has found that a party has "failed to make a good faith effort to settle" under R.C. 1343.03(C) if the party has not:

> (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party.

*Kalain* at syllabus.

{¶ 65} The final prong does not need to be satisfied if the party had a good faith, objectively reasonable belief, that it had no liability. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 658-59 (1994); *Kalain* at syllabus. This exception, however, is strictly construed and does not excuse a defendant from satisfying the other three prongs. *Whitmer v. Zochowski*, 10th Dist. No. 15AP-52, 2016-Ohio-4764, ¶ 116, citing *Galayda v. Lake Hosp. Sys., Inc.*, 71 Ohio St.3d 421, 429 (1994). "A trial court has discretion to determine whether the parties have exercised good faith, and an appellate court will only reverse such a determination if the trial court has abused its discretion." *Whitmer* at ¶ 116, citing *Moskovitz* at 658.

{¶ 66} In the present case, the Maioranas argue that True Grip failed to make a good faith settlement offer and, as such, they were entitled to conduct discovery as to True Grip's assessment of the case. Pursuant to Civ.R. 26(B)(4), a party may obtain discovery of documents that were prepared in anticipation of litigation for trial. The Maioranas contend that they have good cause for the documents based on the disparities in settlement offers.

They contend that they would have been able to present more evidence if allowed to receive the subpoenaed information at issue.

{¶ 67} As set forth previously, True Grip filed several dispositive motions as to the statute of limitations and Mr. Maiorana's assumption of risk. Still, True Grip pursued settlement of the case through mediation. Prior to the first mediation, the Maioranas noted that the *Robinson v. Bates* number at issue was $33,740.35 with lost earnings of $4,425.00. *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362. The Maioranas provided an opening figure of $371,000. According to True Grip, it provided a settlement offer of $15,000 as an opening bid while the original defendants did not make any settlement offer. The mediator concluded the mediation stating that, given the distance between the parties, it would harden the positions if they continued.

{¶ 68} On August 16, 2019, the trial court held its own mediation with both parties. True Grip states that the trial court asked it to make settlement offers of $40,000 then $50,000 to resolve the case, which it did. True Grip states that Maioranas rejected both offers with no indication what would be an acceptable comparable settlement figure. The Maioranas made a pre-trial demand of $395,000, which was rejected by True Grip.

{¶ 69} During the March 4, 2020 hearing, the trial court denied the Maioranas' motion for prejudgment interest and request for discovery. The trial court explained its reasoning, noting that the parties exchanged several settlement figures throughout the case and participated in multiple mediations. Given the complex legal issues at play such as the late addition of True Grip under Civ.R. 15(C), the assumption of risk defense, and the potential comparative negligence of Mr. Maiorana in the case, the Maioranas' chances of prevailing at the end of the case were far from certain. The trial court noted that its own evaluation of the case was around $150,000, and it deemed True Grip's $50,000 offer, albeit on the lower end of the spectrum, constituted a good faith effort to resolve the case.

{¶ 70} After careful review of the record, we find the trial court did not abuse its discretion in denying discovery of the insurance claim's file and attorney's file in this case as it found it was not necessary to resolve the motion for prejudgment interest. Here, the trial court was aware of the facts and legal arguments at issue having presided over the jury trial. While the claim's file would certainly have informed the trial court's analysis as to whether True Grip failed to make a good faith effort to settle, the trial court had unique

insight into the efforts made by the parties to resolve the case as it conducted its own mediation. The trial court would have been familiar with True Grip and its insurer's evaluation of the case as well as knowledge of their efforts to resolve the case before trial. Accordingly, the trial court was best positioned to determine if True Grip participated in good faith negotiations. The trial court's reasoning, at least as to the comparative negligence aspect, is certainly validated by the jury reducing the verdict by 33.5 percent based on the comparative negligence of Mr. Maiorana. Given the many complex legal arguments leading up to trial, and the trial court's involvement in the mediation, its decision to not allow the Maioranas to conduct discovery before denying their motion for prejudgment interest was not unreasonable.

{¶ 71} For the foregoing reasons, we overrule the Maioranas' sole assignment of error.

## IV. CONCLUSION

{¶ 72} Having overruled True Grip's twelve assignments of error and the Maioranas' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and BEATTY BLUNT, JJ., concur.

_____